IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:13-cv-00333-FDW

| | |
|---|---|
| TORREY F. WILCOX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BETTY BROWN, Chaplain; | ) |
| DWAYNE TERRELL, Superintendent, | ) **ORDER** |
| Marion Correctional Institution; | ) |
| RANDY TEAGUE, Superintendent | ) |
| Of Programs (Assistant), Marion | ) |
| Correctional Institution; CHAPLAIN | ) |
| MENHINICK, | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on consideration of the pro se complaint filed by Plaintiff. For the reasons that follow, this civil action will be dismissed.

I. BACKGROUND

Plaintiff is a prisoner of the State of North Carolina following convictions for sexual offenses in Macon County Superior Court on May 15, 2006. Plaintiff's projected release date is August 30, 2018.[1]

In his complaint, Plaintiff maintains that he is an adherent of the Rastafarian faith and that the Rastafarian worship services were suspended on September 12, 2013, while he was housed at Marion Correctional Institution. Plaintiff contends that Defendant Chaplain Brown "authorized Superintendent Dwayne Terrell and Assistant Superintendent of Programs Randy Teague to close the Rastafarian worship service." (Compl. at 4).

---

[1] This information was obtained from the website maintained by the North Carolina Department of Public Safety (DPS), Adult Corrections Division.

1

On September 18, 2013, Plaintiff filed a grievance pursuant to the prison's administrative remedy procedure in an effort to challenge the cancellation of the Rastafarian services. On or about November 22, 2013, the grievance was denied on the grounds that there was no chaplain available to monitor the services. (1:13-cv-00333, Doc. No. 5).[2]

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915(A)(a), "[t]he court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Following this initial review the "court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted." Id. § 1915A(b)(1). In conducting this review, the Court must determine whether the complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

A pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in the complaint which set forth a claim that is cognizable under Federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990).

## III. DISCUSSION

A. Plaintiff's First Amendment claim

"The Free Exercise Clause of the First Amendment forbids the adoption of laws designed to suppress religious beliefs or practices," and "[i]ts protections . . . extend[ ] to the prison

---

[2] The Court finds that consideration of Plaintiff's written grievance and the response thereto by prison officials are properly considered in determining whether Plaintiff's complaint states a claim for relief. See Philips v. Pitt County Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

2

environment." Morrison v. Garraghty, 239 F.3d 648, 656 (4th Cir. 2001) (citations omitted). To state an actionable claim under the Free Exercise Clause, a plaintiff must show that he sincerely held a religious belief and that the defendant's actions substantially burdened his religious freedom or expression of his belief. Blue v. Jabe, 996 F. Supp. 499, 502 (E.D. Va. 1996) (citing Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972)). The Supreme Court has defined "substantial burden" in various ways, including "putting substantial pressure on an adherent to modify his behavior and violate his beliefs," Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 717-18 (1981), and forcing an individual to "choose between following the precepts of [his] religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other hand." Sherbert v. Verner, 374 U.S. 398, 404 (1963). Finally, inmates' First Amendment rights must be balanced with prisons' institutional needs of security, discipline, and general administration. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). Therefore, a prison regulation impinging on inmates' constitutional rights is valid if it is reasonably related to legitimate penological interests. See Turner v. Safley, 482 U.S. 78, 89 (1987). Indeed, the role of the federal judiciary is not to micro-manage state prisons, and the expertise of prison officials must be given due deference. See Sandin v. Conner, 515 U.S. 472, 482 (1995).

    B.    Plaintiff's claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA")

Under RLUIPA, the government is prohibited from imposing a "substantial burden on the religious exercise of a person residing in or confined to an institution" unless the government demonstrates that the imposition of that burden furthers a "compelling governmental interest" by the least restrictive means. 42 U.S.C. § 2000cc-1(a)(1)-(2). Although RLUIPA does not define

the term "substantial burden," the Fourth Circuit has held that a "substantial burden on religious exercise occurs [under RLUIPA] when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (alteration in original) (quoting Thomas, 450 U.S. at 718. "On the opposite end of the spectrum . . . a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004). "Religious exercise" in this context includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

In establishing a claim under RLUIPA, inmates must first show that they have sought to engage in an exercise of religion and, second, that the prison has engaged in a practice that substantially burdens that exercise of religion. See Smith v. Ozmint, 578 F.3d 246, 250-51 (4th Cir. 2009) (citing Lovelace, 472 F.3d at 186). Once the inmate has alleged a substantial burden, the prison must demonstrate that the practice in question is the least restrictive means of furthering a compelling governmental interest. Id. Additionally, while RLUIPA authorizes injunctive and declaratory relief, it does not waive a state's Eleventh Amendment immunity, nor does it authorize suits for money damages against prison officials, whether in their official or individual capacities. Rendelman v. Rouse, 569 F.3d 182, 187-89 (4th Cir. 2009); accord Sossamon v. Texas, 563 U.S. 277, 293 (2011). See also Wall v. Wade, 741 F.3d 492, 496 n.5 (4th Cir. 2014) (citing Sossamon).[3] Finally, to state a RLUIPA claim against an individual, a plaintiff must establish that the individual acted with the requisite intent. Lovelace, 472 F.3d at

---

[3] In his complaint, Plaintiff seeks monetary damages against the defendant prison officials; however, to the extent he seeks such damages for alleged violations of the RLUIPA this claim must fail. (Compl. at 4).

4

194-95. In the RLUIPA context, the Fourth Circuit has held that such a claim requires more than negligence and is satisfied only by intentional conduct. Id. at 194 ("We conclude that simple negligence, the lowest common denominator of customary tort liability, does not suffice to meet the fault requirement . . . of RLUIPA.") (internal quotation marks omitted).

The Fourth Circuit has held that "RLUIPA incorporates and exceeds the Constitution's basic protections of religious exercise." Lovelace, 472 F.3d at 198. Finding that RLUIPA "mimics" the First Amendment by incorporating the substantial burden test and by referring to the Free Exercise Clause relative to the allocation of the burden of proof, the court also explained that the primary difference is that RLUIPA "adopts a more searching standard of review than that used for parallel First Amendment claims, strict scrutiny instead of reasonableness." Id. at 199 n.8 (internal quotation omitted). Because the RLUIPA "incorporates and exceeds the Constitution's basic protections of religious exercise," a finding of no liability under RLUIPA necessarily means that a First Amendment claims also fails.

IV.   ANALYSIS

The Court finds that dismissal of this action is appropriate for several reasons. First, as to Defendant Menhinick, the complaint alleges that Menhinick informed him that Rastafarian services would resume in December 2013, but he later noted that Defendant Terrell had decided not to resume the services. (Compl. at 5). As Terrell made this decision in his supervisory capacity as superintendent, Menhinick cannot be held responsible for following orders.

Second, the NC DPS maintains a North Carolina Prisons Religious Practices Guide and Reference Manual. See Wright v. Lassiter, No. 5:13-CT-3245-D, 2015 U.S. Dist. LEXIS, at *2 (E.D.N.C. June 11, 2015). This manual provides that Rastafarians may conduct their religious observance in private or they may attend corporate worship so long as the service is conducted

5

by an approved worship leader. (5:13-CT-3245, Doc. No. 45 at 23). In Plaintiff's case, it became apparent in September 2013 that Rastafarians would not be permitted to conduct a corporate service because there was no chaplain to monitor their services. (1:13-cv-00333, Doc. No. 5: Step Three Response at 2). Although Defendant Terrell allegedly would not permit the services to resume even if supervised by Chaplain Menhinick, Plaintiff would still have been permitted to attend another corporate worship service or pray privately. See (NC Prisons and Policy Manual which provides in Chapter H, § .0106 that any regular population inmate may attend any corporate worship service within the prison). Finally, Plaintiff could have applied in accordance with NC DPS religious practice to the Chaplaincy Service Central Office to seek a recommendation and authorization to personally provide "leadership for non-Christian faith groups." Id. § .0107.[4]

The Court also notes that Plaintiff does not appear to have utilized the prison's mandatory administrative remedy procedure to complain about the decision of Superintendent Terrell to cancel the newly scheduled Rastafarian Services after Chaplain Menhinick appeared ready to supervise them. As a state prisoner, Plaintiff is bound by the mandatory requirements of the Prisoner Litigation Reform Act ("PLRA") which provides that a prisoner must exhaust his administrative remedies prior to the commencement of a civil action under § 1983. The PLRA provides, in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

---

[4] This manual can be accessed at the following web address:
http://www.doc.state.nc.us/dop/policy_procedure_manual/index.htm

In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life and the Court noted that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). The Porter Court went on to stress that the exhaustion requirement must be met before commencement of the suit. Id. Whether an inmate has properly exhausted his administrative remedies is a matter to be determined by referencing the law of the state where the prisoner is housed and where the allegations supporting the complaint arose. See Jones v. Bock, 549 U.S. 199, 218 (2007) ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

The Fourth Circuit has determined that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. Anderson v. XYZ Corr. Health Servs., 407 F.3d 674 (4th Cir. 2005). Indeed, failure to exhaust administrative remedies is an affirmative defense, but the Court is not prohibited from sua sponte examining the issue of exhaustion in reviewing the complaint. As the Fourth Circuit observed:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

Anderson, 407 F.3d at 683.

In North Carolina, state prisoners must complete a three-step administrative remedy procedure (the "ARP") in order to properly exhaust their administrative remedies. See N.C. Gen. Stat. §§ 148-118.1 to 148-118.9 (Article 11A: Corrections Administrative Remedy Procedure); Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008) (discussing the ARP). After Plaintiff filed

7

his complaint, he filed a Declaration in which he states that Chaplain Menhinick was hired by Marion Correctional on or about November 20, 2013, and that on December 12, the chaplain informed Plaintiff that the Rastafarian services would not resume based on Superintendent Terrell's decision. In any event, the Rastafarian services resumed on January 4, 2015. (1:13-cv-00333, Doc. No. 9: Plaintiff's Declaration). Interestingly, Plaintiff attaches a grievance filed by a fellow inmate, Marcus Thorpe that complains about the December cancellation of the Rastafarian services. This grievance was dismissed at the Step-Three stage. (Id., Doc. No. 9-1 at 1-5). It is clear that a fellow inmate's exhaustion of a claim in the grievance procedure cannot excuse Plaintiff's failure to do so. Accordingly, the Court finds that Plaintiff failed to exhaust his administrative remedies by failing to file a claim against Terrell following the second cancelling of the services.

Based on the foregoing, the Court finds the record demonstrates that each of the defendants was following well-delineated policy as adopted by the North Carolina Department of Public Safety, Adult Correction Division, and which policy was likely binding on them. Moreover, Plaintiff could have applied to be the leader of Rastafarian services, and he had the opportunity to pray in private or attend other corporate services.

V. CONCLUSION

Based on the foregoing, the Court finds that Plaintiff has failed to state a claim. 28 U.S.C. § 1915A(b)(1).

**IT IS, THEREFORE, ORDERED** that Plaintiff's complaint is **DISMISSED**. (Doc. No. 1).

The Clerk of Court is respectfully directed to close this civil case.

**SO ORDERED**.

Signed: October 13, 2016

Frank D. Whitney
Chief United States District Judge